UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | Civil Action No. 3:18-CV-01819-X |
| EMPLOYERS MUTUAL CASUALTY COMPANY and CORONA MANAGEMENT VENTURES, LLC., | § § § § § | |
| *Defendants.* | § § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Great American Insurance Company (Great American) brings this action to recover $1 million from Employers Mutual Casualty Company (Employers Mutual), the limit of EMC's Umbrella Policy. Both parties filed motions for summary judgment. After careful consideration, and as explained below, the Court **GRANTS** Employers Mutual's motion for summary judgment, **DENIES** Great American's motion for summary judgment, and **DISMISSES** Great American's remaining claims.

I. Background

This case involves an insurance-coverage dispute between two umbrella insurers arising from a vehicle accident. Employers Mutual issued both a primary commercial auto policy and a commercial umbrella policy, with a $1 million limit, to Corona Management Ventures LLC (Corona). Great American issued an umbrella policy to Liberty Tire Recycling LLC (Liberty Tire) with a limit of $30 million. Liberty Tire also held a primary commercial auto policy from Liberty Mutual Fire Insurance Company (Liberty Mutual).

1

Gerald Decker was performing tire collection services as an employee of Corona and on behalf of Liberty Tire. His vehicle collided with two other vehicles, killing one driver and injuring another. The injured driver and the deceased driver's decedents filed lawsuits in state court against Decker, Liberty Tire, and Corona, which were later consolidated (the underlying lawsuit).[1] The underlying lawsuit resulted in a $7 million settlement agreement, from which the Great American claim arises. Payment of the primary policies funded the first $2,668,537.90 of the settlement. But Great American and Employers Mutual disputed their respective liability for the remaining $4,331,462.10.

Great American alleges that the Employers Mutual umbrella policy provided coverage to Corona, Decker, and Liberty Tire after exhaustion of the Employers Mutual Primary Policy and the Liberty Mutual Primary Policy but before Great American's umbrella policy. Simply put, only after exhausting the $1,000,000 Employers Mutual umbrella policy would Great American's $30,000,000 umbrella policy provide coverage. Employers Mutual, unsurprisingly, disagrees. When Employers Mutual refused to contribute $1,000,000 from its umbrella policy to the settlement agreement, Great American claimed it "was compelled to fully fund the remaining $4,331,462.10," although Employers Mutual did offer to contribute to the remaining balance on a pro rata basis.[2]

At issue is which insurer's umbrella policy applied to the balance that remained after exhaustion of the primary policies and whether Great American can recover the $1,000,000

---

[1] The plaintiffs filed the lawsuits in the 32nd Judicial District Court of Nolan County, Texas (*Leslie Sue Stalder v. Gerald Mason Decker, et al.*; Cause No. 19814) and in the 350th Judicial District Court of Taylor County, Texas (*Charles Hill, et al. v. Liberty Tire Recycling, LLC, et al.*). The cases were consolidated in the 32nd Judicial District Court of Nolan County (*see* Ex. 3, at EMC's App. 35–44) when the Hills intervened.

[2] *See* [Doc. No. 55 at 5].

2

balance it alleges Employers Mutual owes. Great American and Employers Mutual both filed motions for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "A fact is material if it 'might affect the outcome of the suit'" and a "factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[4]

## III. Analysis

The Court assumes without deciding that Employers Mutual's umbrella policy applies before Great American's umbrella policy. But Great American failed to offer any non-conclusory evidence of segregation of the settlement payment. Segregation of covered damages from uncovered damages is essential to recovery.[5] Great American failed to segregate damages paid for Liberty Tire's direct liability from damages paid for Liberty Tire's vicarious liability, and it also failed to segregate damages paid on behalf of Corona and Decker from damages paid on behalf of Liberty Tire. This is a bar to its recovery from Employers Mutual.

The plain language of Employers Mutual's umbrella policy demonstrates that it is liable only for Liberty Tire's vicarious liability for Corona, and the parties do not dispute this. Employers Mutual's umbrella policy states that "anyone liable for the conduct of an insured

---

[3] FED. R. CIV. P. 56(a).

[4] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[5] *See Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971). Indeed, Great American conceded this point at the hearing on these motions.

3

. . . is also an insured, but only to the extent of that liability."[6] Because Corona was the named insured on Employers Mutual's umbrella policy, Liberty Tire is only an insured to the extent of its vicarious liability for Corona. In short, Corona's direct liability, Decker's direct liability, and Corona's vicarious liability for Liberty Tire fall within the scope of Employers Mutual's umbrella policy. Liberty Tire's direct liability does not. In the underlying lawsuit, there was no determination of Liberty Tire's vicarious liability for Corona because the case settled.

The settlement agreement in the underlying lawsuit states that the intervenors "hereby release and forever discharge Defendants [and] Defendants' Insurers . . . from any and all claims . . . ."[7] The settlement agreement contains no language purporting to segregate covered from uncovered damages. In other words, the settlement agreement in the underlying lawsuit was a "complete release[] of liability, but the agreement[] did not allocate the proceeds of the settlement[] to the damages/liabilities they covered."[8]

The language of the agreement here is similar to the language of the settlement agreements at issue in *Satterfield & Pontikes Construction, Inc. v. U.S. Fire Insurance Co.* There, the Fifth Circuit held that the insured could not recover from his secondary insurer when he failed to properly allocate covered damages from uncovered damages.[9] Here, Great American failed to offer any evidence allocating damages covered by the Employers Mutual umbrella policy (*i.e.*, amounts paid for Liberty Tire's vicarious liability for Corona or Decker/Corona's liability) from damages not covered by the Employers Mutual umbrella policy (i.e., amounts paid for Liberty Tire's direct liability). Allowing Great American to

---

[6] [Doc. No. 52 at 8].

[7] [Doc. No. 52 at 15].

[8] *Satterfield & Pontikes Constr., Inc. v. U.S. Fire Ins. Co.*, 898 F.3d 574, 576–77 (5th Cir. 2018).

[9] *Id.* at 581–83.

4

recover the total value of the Employers Mutual umbrella policy when it cannot produce any evidence as to what Employers Mutual actually owes—if anything—lacks legal authority.

Great American offers two affidavits as evidence "that its entire contribution to the settlement, much less the amount it contributed that [Employers Mutual] should have contributed, was for claims covered by the [Employers Mutual] umbrella policy."[10]  Great American argues that because the value of the vicarious-liability claim asserted against Liberty Tire was worth at least the $1,000,000 it alleges Employers Mutual should have contributed (and maybe worth more than the entire $7,000,000 settlement), there is no allocation issue.

The affidavits are from Brent Anderson, a defense attorney for Liberty Tire in the underlying lawsuit, and Carol Euwema, Great American's lead claim adjuster in connection with the claims asserted against Liberty Tire in the underlying lawsuit.  Anderson's affidavit states that "Liberty Tire's most significant, and perhaps only, exposure in the Hill Lawsuit was in connection with Plaintiffs' claims of vicarious liability," and that "the reasonable settlement value . . . against Corona and Liberty Tire for vicarious liability alone exceeded $7,000,000."[11]  In a strikingly similar affidavit, Euwema states that "Liberty Tire's most significant exposure in the Hill Lawsuit was in connection with Plaintiffs' claims of vicarious liability . . . ."[12]  These statements are both from revised affidavits filed during the second round of summary-judgment briefing. [13]

---

[10] [Doc. No. 63 at 14].

[11] Pl's App. at 0491–92.

[12] Pl's App. at 0495.

[13] These affidavits are Great American's second attempt to prove segregation.  The first attempt was in the form of more bare-bones affidavits attached to Great American's motion for summary judgment.  Great American attached the second and more robust affidavits to its response to Employers Mutual's motion for summary judgment.

A conclusory affidavit is not competent summary judgment evidence.[14] "Conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment."[15] Even after revision, the affidavits remain conclusory. While the affidavits offer facts to support the inference that a claim for vicarious liability *existed*, they only offer conjecture that the claim for vicarious liability was *worth* at least what Great American now wishes to recover from Employers Mutual. And that is fatal to Great American's ability to recover from Employers Mutual. Great American offers no competent evidence that it segregated the settlement payment, and the evidence it offers to prove it did not *need* to segregate the settlement payment cannot defeat summary judgment.

While the Court agrees with Great American that allocation doesn't require "mathematical certainty," there still needs to be some "reasonable, reliable, non-arbitrary basis" for allocation of covered from uncovered losses.[16] That basis does not exist here. In short, Great American failed to produce any non-conclusory evidence to raise a genuine dispute of material fact. That is not to say that an affidavit, generally, is not competent summary judgment evidence. But where, as here, an affidavit offers only conclusory statements, it cannot raise a fact issue that will defeat summary judgment.[17]

## IV. Conclusion

Despite two attempts, Great American has not carried its burden of properly allocating damages paid in the settlement agreement for covered damages from uncovered

---

[14] *See Lechuga v. S. Pac. Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992).

[15] *Id.*

[16] *Nat'l Union Fire Ins. Co. v. Puget Plastics*, 649 F.Supp.2d 613, 649–50 (S.D. Tex. 2009).

[17] The Court need not reach the parties' other arguments because Great American's failure to properly allocate the settlement payment is fatal to its claim.

6

damages. Because it failed to do so, it may not recover from Employers Mutual. Therefore, the Court **GRANTS** Employers Mutual's motion for summary judgment, **DENIES** Great American's motion for summary judgment, and **DISMISSES** Great American's claims. A separate final judgment will follow.

**IT IS SO ORDERED** this 15th day of October 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE